[No. 22434-4-I.   Division One.   October 16, 1989.]

JOHN YACOBELLIS, *Appellant,* v. THE CITY
OF BELLINGHAM, *Respondent.*

*John H. Anderson, Sherwood, Bentley & Anderson,* and *Rolf Beckhusen,* for appellant.

*Bruce Disend, City Attorney,* and *Richard Little, Assistant,* for respondent.

REVELLE, J.*—As an independent contractor, John Yacobellis was hired by the City of Bellingham to manage its Lake Padden Golf Course facility for the City Parks and Recreation Department. Yacobellis' contract ran from 1984 through 1986 with an option to renew for an additional 3 years. In February 1986, Yacobellis gave notice of intent to renew. Negotiations were ongoing on several issues, including Yacobellis' lease proposal.

During the summer and fall of 1986, the City conducted a "Municipal Golf Manager Survey". The survey was mailed to 20 Washington governmental agencies that manage 27 public golf courses. The stated purpose of the survey was to assist in negotiating a new contract with Yacobellis. Byron Elmendorf, the director of the City Parks and Recreation Department, promised to compile all the surveys

---

*Judge George H. Revelle is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150 and CAR 21(c).

and return copies of the compiled information to each participating agency. Elmendorf informed the agencies that he would keep the originals of the survey on file if they would like detailed information.

This method of fact gathering was not new to the Parks Department. It had been Elmendorf's practice to contact other departments to gain information on specific issues relating to the operation of various recreation facilities, such as recreation program fees, job descriptions, department policies, maintenance standards, and swim pool operations and revenue. The information was gathered through telephone calls, questionnaire mailings or meeting discussions. The raw data from the worksheets was then compiled into a summary comparison. The Parks Department also conducted community surveys on various recreation programs and needs.

Elmendorf mailed a copy of the municipal golf survey report to Yacobellis on about November 7, 1986. On November 26, 1986, Yacobellis requested a copy of the raw data, *i.e.,* the answers to the questionnaire. The City mailed Yacobellis a copy of the cover letter and questionnaire which was sent to the agencies. The City refused to provide copies of the completed questionnaires on the ground that all complete data was in the survey. The City advised Yacobellis to contact each agency individually. Subsequently, on numerous occasions Yacobellis renewed his request for release of the questionnaires pursuant to the public disclosure law. On September 8, 1987, the City informed Yacobellis that the completed questionnaires had been discarded. It is unknown when this occurred.

Yacobellis filed a "complaint seeking access to public records". Yacobellis sought disclosure of all information concerning the golf survey, costs and attorney fees and $25 per day for each day that he was denied access to the documents. The matter was heard on Yacobellis' motion for an order to show cause and the City's motion for summary judgment. The trial court found that the report was the final document, that the questionnaires were merely the

"sense impressions" used to create the report and that the questionnaires were not public records. The trial court also determined that the question of production of the documents was moot since they had been discarded. The court entered judgment for the City.

Yacobellis appeals, raising the following issues:

1. Are the issues raised in the appeal moot?

2. Did the trial court err in determining that the completed questionnaires are not public records?

3. Are the completed questionnaires exempt from disclosure?

4. Is Yacobellis entitled to costs and attorney fees at trial and the $25 per day statutory award?

5. Is Yacobellis entitled to costs and attorney fees on appeal?

## MOOTNESS

The threshold question is whether the issues are moot. Yacobellis contends that the issues are not moot because there may be a recurring problem of access to the same or similar records in the future and he is entitled to compensation. The City does not address this issue.

■■ "'It is a general rule that, where only moot questions or abstract propositions are involved, or where the substantial questions involved in the trial court no longer exist, the appeal . . . should be dismissed.'" *Harvest House Restaurant, Inc. v. Lynden,* 102 Wn.2d 369, 373, 685 P.2d 600 (1984) (quoting *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). A case is moot if the court can no longer provide effective relief and the issues it presents are purely academic. *Kuehn v. Renton Sch. Dist. 403,* 103 Wn.2d 594, 597, 694 P.2d 1078 (1985); *In re Schuoler,* 106 Wn.2d 500, 503, 723 P.2d 1103 (1986). Although declaratory relief may be impossible to grant due to an intervening occurrence, the existence of a monetary dispute arising out of a declaratory action will prevent the action from becoming moot. *Kuehn v. Renton Sch. Dist. 403, supra* at 597 (action was not moot where, although the court could not

grant declaratory relief enjoining the alleged unconstitutional search, issue of nominal damages and attorney fees under 42 U.S.C. § 1983 remained); *see D.C.R. Entertainment, Inc. v. Pierce Cy.*, 55 Wn. App. 505, 778 P.2d 1060 (1989).

Because the documents were destroyed, the court cannot grant complete relief. However, the questions of costs, attorney fees and the $25 per day statutory award remain. The issues in this case are not moot. *D.C.R. Entertainment, Inc. v. Pierce Cy., supra; Kuehn v. Renton Sch. Dist. 403, supra.*

## PUBLIC RECORDS

■ The Washington public disclosure act, RCW 42.17, is a strongly worded mandate for broad disclosure of public records.[1] *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The act is to be liberally construed to promote full access to public records to assure continuing public confidence in governmental processes and to assure that the public interest is fully protected. RCW 42.17.010; *Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 565, 618 P.2d 76 (1980). RCW 42.17.260 provides that each agency shall make available for public inspection and copying all public records unless the record falls within a statutory exemption. The agency shall delete identifying information only to prevent an unreasonable invasion of personal privacy and must justify any deletion in writing. RCW 42.17.260(1). Upon request, agencies shall make public records available promptly and shall not distinguish among persons requesting records, RCW 42.17.270, and release of information is not conditioned upon the use to which the information will be put. *In re Rosier*, 105 Wn.2d 606, 611, 717 P.2d 1353 (1986). In addition, each agency shall make available a current index providing indentifying information as to numerous types of records, including:

---

[1]RCW 42.17 closely parallels the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552. Judicial interpretations of the FOIA are helpful in construing RCW 42.17. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978).

Factual staff reports and studies, factual consultant's reports and studies, scientific reports and studies, and any other factual information derived from tests, studies, reports, or surveys, whether conducted by public employees or others . . .

RCW 42.17.260(2)(e). Upon the motion of a person who has been denied access to records, the superior court may require the agency to show cause why access was denied and the burden of proof is on the agency to justify its failure to disclose. RCW 42.17.340(1). Judicial review of all agency actions is de novo. RCW 42.17.340(2).

■ The public disclosure act establishes a 3–part test for determining whether a particular document is a public record:

"Public record" includes [1] any writing [2] containing information relating to the conduct of government or the performance of any governmental or proprietary function [3] prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

RCW 42.17.020(26).[2]

In this case, it is clear that the questionnaires were a writing and that they were prepared, used or retained by a governmental agency, *i.e.*, the City's Parks Department. It also appears that they contained information relating to the conduct of a governmental function, *i.e.*, management of municipal golf courses. The City contends, however, that to be a public record, the document must have been intended to be a memorial or permanent evidence of the matters to which it relates. The City compares the completed questionnaires to personal notes.

In *Cowles Pub'g Co. v. Murphy,* 96 Wn.2d 584, 637 P.2d 966 (1981), a newspaper sought access to search warrants and affidavits of probable cause. The court did not determine whether the documents were public records within the meaning of the statute because they were accessible under a common law right. In dicta, however, the court stated that the issue of access to records should be determined by the

---

[2]The FOIA provides for access to "agency records". "Agency records" is not defined in the FOIA.

role the documents play in the system, not who handles them.

In cases interpreting the FOIA, courts have not focused on one factor, but instead have looked at all the circumstances, such as whether the documents were in the agency's control, were generated within the agency, were placed into the agency's files and were used by the agency. *Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice,* 742 F.2d 1484 (D.C. Cir. 1984).

As the City contends the cases consistently hold that personal notes, as well as telephone messages and daily appointment calendars, are not public records. This is because they are generally created solely for the individual's convenience or to refresh the writer's memory, are maintained in a way indicating a private purpose, are not circulated or intended for distribution within agency channels, are not under agency control, and may be discarded at the writer's sole discretion. *See, e.g., American Fed'n of Gov't Employees, Local 2782 v. United States Dep't of Commerce,* 632 F. Supp. 1272 (D.D.C. 1986); *Kalmin v. Department of Navy,* 605 F. Supp. 1492 (D.D.C. 1985); *Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice, supra; British Airports Auth. v. CAB,* 531 F. Supp. 408 (D.D.C. 1982); *Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc.,* 379 So. 2d 633 (Fla. 1980).

In cases where the document in question is statistical data or a questionnaire or survey, results have varied. Where the source of the information was private, the courts have generally held that the data or survey is not a public record. *See, e.g., A.R. Bldg. Co. v. Pennsylvania Housing Fin. Agency,* 93 Pa. Commw. 140, 500 A.2d 943 (1985); *Aamodt v. Department of Health,* 94 Pa. Commw. 54, 502 A.2d 776 (1986). *But see Winston v. Mangan,* 72 Misc. 2d 280, 338 N.Y.S. 654 (1972).

In most cases where the source of the information was public, the courts have held that the data or questionnaires

were public records. In *KUTV, Inc. v. Utah Bd. of Educ.*, 689 P.2d 1357 (Utah 1984), school board employees prepared a survey regarding racial and religious discrimination at a high school. The survey included eight objective questions and three open–ended questions and was distributed to teachers and students. The Board analyzed the data and released to the public a statistical analysis of the responses to the eight fixed questions. KUTV and a reporter sought access to either the actual questionnaires or edited questionnaires from which the names or identifying information had been deleted. The court held that the questionnaires were public records.[3]

In *Pennsylvania Ass'n for Children & Adults With Learning Disabs. v. Department of Educ.*, 91 Pa. Commw. 531, 498 A.2d 16 (1985), a group sought access to statistical data and education plans submitted to the Department by school districts. The court held that the education plans were not public records because they were mere proposals and did not involve any agency decision, but the court also held that the statistical information was a public record which had been collected by a governmental agency pursuant to its obligations under certain regulations.

In *Mid–America Television Co. v. Peoria Housing Auth.*, 93 Ill. App. 3d 314, 417 N.E.2d 210 (1981), a television station sought the addresses of subsidized property and the amount of federal funds that landlords received through the PHA. The court held that a simple summary of the total amounts was inadequate to further the purpose of the public disclosure statute and that the information requested was a public record.

In *Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc., supra,* the City of Jacksonville hired an independent consulting firm to conduct a nationwide search for job applicants. Various types of documents were created in the

---

[3]Under the Utah public disclosure law, public records includes written materials made or received in connection with the transaction of public business by public offices, agencies, or institutions.

process. The court held that with the exception of hand-written notes, all of the documents, including letters, memos, resumes and travel vouchers, were public records. Under the statute, public records included documents made or received in connection with the transaction of official business by an agency. The court held that this definition included any document intended to perpetuate, communicate or formalize knowledge. It did not include materials prepared as drafts or notes which constitute mere precursors of governmental records. The court stated at page 640:

> Matters which obviously would not be public records are rough drafts, notes to be used in preparing some other documentary material, and tapes or notes taken by a secretary as dictation. Inter-office memoranda and intra-office memoranda communicating information from one public employee to another or merely prepared for filing, even though not a part of an agency's later, formal public product, would nonetheless constitute public records inasmuch as they supply the final evidence of knowledge obtained in connection with the transaction of official business.

In light of the above cases, the questionnaires, which were prepared by a governmental agency and responded to by other governmental agencies, were the final evidence of the knowledge obtained even though they were not the formal product which the Parks Department intended to release to the public. Accordingly, we conclude that they are public records within the meaning of RCW 42.17.020.

### Statutory Exemption

Former RCW 42.17.310(1) lists 23 types of personal and other records which are exempt from disclosure. The exemptions are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted. "No exemption may be construed to permit the nondisclosure of statistical information not descriptive of any readily identifiable person or persons." RCW 42.17.310(2). If the agency refuses, in whole or part, inspection of any public record, it "shall include a statement of the specific exemption authorizing the withholding of the record (or part) and

a brief explanation of how the exemption applies to the record withheld." RCW 42.17.310(4).

■ The City does not rely on any statutory exemption and argues that the issue of exemption is not relevant to this appeal. Because we have determined that the documents are public records, we will consider whether there is an applicable exemption. The only exemption which might be applicable is the so-called "deliberative process" exemption:

> (i) preliminary drafts, notes, recommendations, and intra-agency memorandums in which opinions are expressed or policies formulated or recommended except that a specific record shall not be exempt when publicly cited by an agency in connection with any agency action.

The purpose of this exemption is to allow frank and uninhibited discussion during the decision–making process. *Hearst Corp. v. Hoppe*, 90 Wn.2d at 132.

> [O]nly those portions of documents actually reflecting policy recommendations and opinions may be withheld under the exemption. Factual data, even when contained within otherwise exempt memoranda, must therefore be produced because the rationale for the exemption . . . is wholly inapplicable to factual material. Unless disclosure reveals and exposes the deliberative process, as opposed to the facts upon which a decision is based, the exemption cannot apply.

(Citations omitted.) *Hearst Corp. v. Hoppe, supra* at 133; *Columbian Pub'g Co. v. Vancouver*, 36 Wn. App. 25, 31–32, 671 P.2d 280 (1983); *Moser v. Kanekoa*, 49 Wn. App. 529, 531–32, 744 P.2d 364 (1987).

The completed questionnaires in this case do not contain opinions or policy recommendations. Rather, they contain only factual data. The completed questionnaires are not within the deliberative process exemption.

### MONETARY REWARD

Yacobellis contends that he is entitled to costs, attorney fees and an amount not to exceed $25 per day for each day that he was denied the right to inspect the documents.

RCW 42.17.340(3) provides:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed twenty-five dollars for each day that he was denied the right to inspect or copy said public record.

We reverse and remand to the trial court to (1) set the amount of costs and attorney fees at trial and upon appeal and (2) determine whether a statutory award is merited and, if so, the amount thereof.

COLEMAN, C.J., and WEBSTER, J., concur.

Review denied at 114 Wn.2d 1002 (1990).