[No. 67244-0.   En Banc.]
Argued May 13, 1999.     Decided September 9, 1999.

CONCERNED RATEPAYERS ASSOCIATION, *Petitioner*, v. PUBLIC UTILITY DISTRICT NO. 1 OF CLARK COUNTY, *Respondent*.

*John S. Karpinski*, for petitioner.

*Carney, Badley, Smith & Spellman* by *James E. Lobsenz*, for respondent.

*Aaron H. Caplan*, on behalf of American Civil Liberties Union of Washington, amicus curiae.

MADSEN, J. — We are asked to decide whether a public disclosure request for a technical document, which was reviewed, evaluated, and referred to by a public agency,

constitutes "use" within the meaning of the Public Disclosure Act, thereby rendering the information a public record subject to disclosure. RCW 42.17.020(36) provides that any information which is "prepared, owned, used, or retained" by any state or local agency regardless of physical form or characteristics is a public record. Here, the trial court dismissed a request by the Concerned Ratepayers Association (CRA or Association), a nonprofit "utility watchdog" corporation, on grounds that the Clark County Public Utility District No. 1 (PUD or District) neither possessed nor "used" the requested technical document (IPS 10380). The Court of Appeals affirmed. We conclude that information which is applied to a given purpose or instrumental to an end or process is "used" within the meaning of the Public Disclosure Act. Where a nexus exists between the information and an agency's decision-making process, as is apparent here, we hold that review, evaluation, and reference to information constitutes "use" and, therefore, qualifies such information as a public record. Accordingly, we reverse the Court of Appeals and remand the case for further proceedings to determine whether the technical document is exempt and attorney fees appropriate.

## FACTS

In 1994, the Clark County Public Utility District proposed the construction of a 248-megawatt power plant in Vancouver, Washington. The District awarded the contract[1] to Cogentrix Energy, Inc. (Cogentrix), the project's general contractor, which in turn subcontracted with General Electric (GE) for the turbine generator component of the power plant.[2]

Betty Smith and Robert Wachter, Clark County citizens who later formed the Concerned Ratepayers Association,[3]

---

[1]The amount of the contract with Cogentrix was for approximately $127 million, while the total cost of the plant was estimated at $156 million.

[2]According to both Cogentrix's facsimile proposal to Economic and Engineering Services, Inc., the engineering consulting agency retained by Clark County, and the Project Description of the Vancouver Combined-Cycle Plant, the turbine generator constitutes one of four major components for the power plant.

[3]The Concerned Ratepayers Association was formed in June 1995.

began making public disclosure requests for documents relating to technical specifications, engineering design, and financial records of the proposed power plant. The PUD disclosed all the requested information to the CRA, except for documents relating to the proposed model for the turbine generator that Cogentrix had originally proposed to install in the Clark County power plant.[4]

After reviewing the numerous documents it had obtained from the District, CRA found several references to IPS 10380. Consequently, CRA made additional requests for the disclosure of the design specifications of the turbine generator, IPS 10380. Smith and Wachter wanted to review the technical specifications in the IPS 10380 in order to determine whether the proposed power plant would be capable of generating more than 250-megawatts of power, thus necessitating a public vote under RCW 80.52.040.

The main concern for the citizens was the power plant's generating capacity. RCW 80.52.040 provides that a public vote is required before a public agency or assignee may issue or sell bonds to finance the cost of constructing a major public energy project. A "[m]ajor public energy project" is defined as "a plant or installation capable, or intended to be capable, of generating electricity in an amount greater than two hundred fifty megawatts . . . ." RCW 80.52.030(2). *See also* RCW 80.52.050 for how elections for approval of major energy projects are to be conducted.

In the process of requesting various documents from the PUD for purposes of invoking the public vote provision of RCW 80.52, the CRA also contacted the Washington State Energy Facility Site Evaluation Council (Council) urging it to assert jurisdiction over the proposed power plant on grounds that the plant would exceed the 250-megawatt threshold. RCW 80.50.040 enumerates the Council's various powers, including the authority to investigate, prepare

---

[4]Although the CRA did not receive a copy of the technical design specifications portion of IPS 10380, the Clark County Public Utility District did disclose 115 pages of the document, which included a section entitled "Turbine-Generator (GE) Scope of Supply." This section was blank. Clerk's Papers (CP) at 14, 276-80.

reports, certify, and issue permits relating to proposed energy plants. *See generally* RCW 80.50.040.

The Council considered CRA's complaints on at least four occasions, holding public meetings on the issue, but ultimately concluded that the proposed power plant would not exceed the statutory threshold and, therefore, would not invoke the statutory voting requirement under RCW 80.52.040 or the Council's jurisdictional threshold pursuant to that chapter.

The PUD's initial response to the Association's request for documents relating to the IPS 10380 stated that the requested document was unavailable at the time, as Cogentrix had the only copy. The PUD also indicated that the information relating to IPS 10380 was to be incorporated into the procedures manual prepared by Cogentrix, and that the District would disclose the procedures manual to CRA upon its receipt. Subsequent correspondence between the PUD and CRA regarding the requested document indicates that the PUD did not receive a complete copy of the IPS 10380 specifications. The District, however, did release 115 pages of related bid information it eventually received from Cogentrix. The PUD's later responses to CRA's continued requests stated that the nature of the District's contract with Cogentrix had changed from a specifications-based contract to a performance-based contract, so that the details of the IPS 10380's engineering design were no longer necessary for the PUD to review.[5] The PUD also explained that the District did not possess the document, and that much of the technical information relating to the IPS 10380 was being claimed as proprietary information by GE, the manufacturer of the turbine generator and, therefore, the technical documents relating to the IPS 10380 were not public records.[6]

---

[5]CRA does not dispute this fact. The record includes only a portion of the original agreement between the PUD and Cogentrix, and does not include a complete copy of the final agreement.

[6]In its communication with the CRA, the District indicated that it had discussed the public disclosure request with a representative of General Electric

Despite the PUD's assertion that the technical design of the IPS 10380 was GE's proprietary information, the PUD did not claim that the document came within any exemption provided for under RCW 42.17.310.

Dissatisfied with the PUD's position, the CRA filed an action for disclosure in Clark County Superior Court. In a letter order the trial court noted that the documents provided by the PUD to the Association suggested the PUD did "use" the IPS 10380. However, the trial court was unclear as to whether the PUD ever possessed or used the requested document. Ultimately, the court ordered the PUD disclose "any and all parts of the IPS 10380 not previously disclosed that were received, viewed, used, and/or retained in any way to develop the original or subsequent plans for the [construction of the] power plant." Clerk's Papers (CP) at 160. The court ordered that, in the alternative, the District was to provide an affidavit if it claimed that all information requested by the CRA had already been disclosed.

Affidavits and documents considered by the trial court included the following:

- October 6, 1994, letter from Cogentrix to Economic and Engineering Services, Inc., the consulting firm retained by the PUD, which updated the proposal for the power plant and refers to the IPS 10380 for documentation relating to the gas turbine, steam turbine and generator scope, to be reviewed as part of the proposal.[7]

- The Project Description of the Vancouver Combined-Cycle Plant which includes a summary of the main equipment to be installed in the power plant, and specifically

and that the representative agreed to review the matter in-house. The record does not indicate whether any follow-up occurred. The District also informed the CRA that it believed General Electric would likely be willing to meet with CRA members regarding their request, and further offered to help persuade General Electric to release the requested information. The CRA neither responded to the opportunity to meet with General Electric nor sought the District's assistance in directly communicating with General Electric.

[7]Although the letter stated that the document was attached, the record indicates that the IPS 10380 document was never actually received by the District.

refers to the IPS 10380 for further detail regarding the proposed combustion turbine package, steam turbine, and generator.

- Deposition of CRA member Robert Wachter, and PUD letters to the organization indicating that in June 1995, Clark County provided CRA with 115 pages relating to the IPS 10380 when the District's contract with Cogentrix specifically provided for the installation of the IPS 10380 turbine generator.

- March 6, 1996, letter from Clark County Public Utilities General Counsel to the CRA, explaining that: "While our engineering department, the Utilities consulting engineers and Cogentrix engineers *have seen and carefully evaluated most if not all of the technical data in the possession of GE regarding the turbine,* much of the technical information has been protected by GE through a claim of proprietary information, i.e. the information is confidential." CP at 390 (emphasis added).

- Affidavit and deposition of James Sanders, PUD Director of Technical Services, indicating PUD officials' attendance at a meeting at Cogentrix's offices in North Carolina, at which time portions of the IPS 10380 "and every page that had anything to do with the combustion turbine" were viewed by the PUD's representative and consulting engineers as the information was being reviewed and discussed by Cogentrix and GE.[8] CP at 176.

- Affidavit and letter of PUD Technical Director indicating that, consistent with Cogentrix's original proposal suggesting the PUD's review of the IPS 10380 during the early stages of the project, the PUD planned to review the engineering details of the IPS 10380.

---

[8]The record is unclear as to the extent to which the District actually reviewed the technical specifications of IPS 10380 since the PUD official suggested that the purpose of the trip to Cogentrix's office was not to review the technical specifications of the turbine generator, but to ensure that the District's specifications for the power plant would be met.

Although the PUD admits that the IPS 10380 model was initially intended to be the turbine generator component of the proposed power plant, a different model was eventually installed.

Based on the PUD's affidavits that it had disclosed all the documents it possessed or used, the trial court dismissed CRA's public disclosure request for the technical specifications of the IPS 10380. The Court of Appeals affirmed, finding that although the evidence showed that the PUD either reviewed, evaluated, or referred to the technical specifications documents relating to the IPS 10380, such was insufficient to establish "use" within the meaning of the Public Disclosure Act. The Court of Appeals, therefore, concluded that the IPS 10380 was not a public record.

## ANALYSIS

Judicial review of all agency actions taken or challenged under RCW 42.17.250 through RCW 42.17.320 of the Public Disclosure Act (PDA or Act) shall be de novo. RCW 42.17.340(3); *Progressive Animal Welfare Soc'y (PAWS) v. University of Wash.*, 125 Wn.2d 243, 884 P.2d 592 (1994) (appellate review under Public Disclosure Act is de novo where record consists only of affidavits, memoranda of law, and other documentary evidence). In reviewing an agency's action with regard to a public disclosure request, we must consider the Act's policy that "free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment." RCW 42.17.340(3). To fulfill the statutory purpose, courts are to liberally construe the Act's disclosure provisions and narrowly construe its exemptions. RCW 42.17.251; *Limstrom v. Ladenburg*, 136 Wn.2d 595, 963 P.2d 869 (1998); *PAWS*, 125 Wn.2d at 251.

■■ At issue in this case is whether the requested document relating to the engineering and technical specification of the IPS 10380 was "used" by the PUD, and thus a public record subject to disclosure. RCW 42.17.020(36) provides that a "public record":

includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

RCW 42.17.020(36). The Act further provides that each agency has a positive duty to disclose public records upon request, and that the agency has the burden of establishing either that the disclosure of the requested document is not required or is exempt in whole or in part. RCW 42.17-.340(1); *Amren v. City of Kalama*, 131 Wn.2d 25, 929 P.2d 389 (1997); *PAWS*, 125 Wn.2d 243.

Although the PUD now suggests that the requested portion of the IPS 10380 is probably exempt as valuable formulae, design, drawings, or research data, as provided for under RCW 42.17.310(1)(h), it neither asserted this argument initially when the CRA requested the IPS 10380 nor directly argues the exemption here. Instead, the PUD maintains that the requested portion of the IPS 10380 is not a public record because the District never possessed or utilized the information. Moreover, since the contract with Cogentrix ultimately called for installation of a different turbine generator, the PUD contends that a detailed description of the technical specifications portion of the IPS 10380 was not used within the meaning of the statute and, therefore, disclosure not required.

However, the record indicates that although the District may not have possessed the document, it did review the technical specifications of the IPS 10380. Moreover, this court has found numerous types of information to be a public record even where portions of the requested information may be exempt.[9] In determining whether the PUD "used" the requested document, the Court of Appeals noted

---

[9]*See Confederated Tribes v. Johnson*, 135 Wn.2d 734, 958 P.2d 260 (1998) (State Gambling Commission records showing amount of "community contribution" paid by Indian tribes to defray impact of Indian gambling operations on nontribal governmental agencies public records); *Limstrom v. Ladenburg*, 136 Wn.2d 595, 963 P.2d 869 (1998) (portion of prosecutor's criminal files were "public records," though in-camera review by trial court was required to determine

that no Washington case has defined or discussed the parameters of the word "use" for purposes of the Act and that possession of information is not determinative of the issue. *Concerned Ratepayers Ass'n v. Public Util. Dist. No. 1*, 93 Wn. App. 219, 231, 968 P.2d 6 (1998). Consequently, the Court of Appeals properly resorted to a dictionary definition of "use" since the Act does not define the word. *Ravenscroft v. Washington Water Power Co.*, 136 Wn.2d 911, 922, 969 P.2d 75 (1998) (resort to dictionary definition to determine plain and ordinary meaning of word). Specifically, the Court of Appeals held that:

> A document relating to a governmental function is "used" by the agency if it is applied to a given purpose <u>or</u> instrumental to an end or process. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2523 (1969) and BLACK'S LAW DICTIONARY 1541 (6th ed. 1990) (defining "use" as employing for or applying to a given purpose or making instrumental to an end or process). Thus, an agency may have used a document not in its possession . . . .

*Concerned Ratepayers Ass'n*, 93 Wn. App. at 231 (emphasis added).

As the PUD correctly points out, the definition employed

extent to which some documents were attorney work product); *Amren v. City of Kalama*, 131 Wn.2d 25, 929 P.2d 389 (1997) (report investigating citizen complaints regarding City of Kalama's police chief not exempt from public disclosure act); *Lindberg v. Kitsap County*, 133 Wn.2d 729, 948 P.2d 805 (1997) (site and drainage engineering drawings for proposed residential developments disclosable public record); *Progressive Animal Welfare Soc'y (PAWS) v. University of Wash.*, 125 Wn.2d 243, 884 P.2d 592 (1994) (although university's research data exempt, grant proposal did not come within exemption); *Dawson v. Daly*, 120 Wn.2d 782, 845 P.2d 995 (1993) (county prosecutor's documents regarding child sex abuse expert witness were public records); *Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 618 P.2d 76, 26 A.L.R.4TH 692 (1980) (patient's public hospital medical records were public records); *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978) (folios containing notes and information relevant to determining market value of real property for appraisal were factual data, even though contained within otherwise exempt data, were not exempt as intragency memoranda and must be disclosed); *Yacobellis v. City of Bellingham*, 55 Wn. App. 706, 780 P.2d 272 (1989) (questionnaires prepared by city's parks department to survey other governmental agencies' management of municipal golf courses were public records even though they were not the formal product the department intended to release to the public); *See also* Michael C. McClintock, et al., *Washington's New Public Records Disclosure Act: Freedom of Information in Municipal Labor Law*, 11 GONZ. L. REV. 13 (1975) for more in-depth discussion of the Public Disclosure Act's legislative intent and policy of broad disclosure.

by the Court of Appeals is expansive in light of the court's linkage of the different meanings with the conjunction "or." *See, e.g., State v. Bolar,* 129 Wn.2d 361, 366, 917 P.2d 125 (1996) (citations omitted) (in interpreting statutory language, "or" serves a disjunctive purpose and does not mean "and"). That is, regardless of whether an agency ever possessed the requested information, an agency may have "used" the information within the meaning of the Act if the information was either: (1) employed for; (2) applied to; *or* (3) made instrumental to a governmental end or purpose. We are thus persuaded that the Court of Appeals' definition is consistent with the Act's purpose of broad disclosure.

However, while we find that the Court of Appeal's definition of "use" is consistent with the liberal interpretation of the Act, the court placed far too much emphasis on the PUD's decision to install a different turbine model. *Concerned Ratepayers Ass'n,* 93 Wn. App. at 232. It was the fact that the District ultimately chose not to utilize the IPS 10380 that led the Court of Appeals to conclude:

> [E]vidence that the District merely reviewed, evaluated, or referred to the document is insufficient to establish "use."
>
> Here, the District asserts that the final specifications for the turbine actually used in the Project do not incorporate IPS-10380. The preponderance of the evidence supports this assertion. Further, CRA has not produced any evidence refuting this contention or shown that the District, in any other way, applied IPS-10380 for a purpose or made it instrumental to a particular end or process.

*Concerned Ratepayers Ass'n,* 93 Wn. App. at 231-32.

Whether information has been "used," however, should not turn on whether the information is applied to an agency's final work product. Rather, the critical inquiry is whether the requested information bears a nexus with the agency's decision-making process. A nexus between the information at issue and an agency's decision-making process exists where the information relates not only to the conduct

or performance of the agency or its proprietary function, but is also a relevant factor in the agency's action. *See* RCW 42.17.020(36); *Yacobellis v. City of Bellingham*, 55 Wn. App. 706, 711, 780 P.2d 272 (1989). That is, certain data may still be relevant and an important consideration in an agency's decision-making process even if it is not a part of the agency's final work product. Thus, mere reference to a document that has no relevance to an agency's conduct or performance may not constitute "use," but information that is reviewed, evaluated, or referred to and has an impact on an agency's decision-making process would be within the parameters of the Act. *See, e.g., Yacobellis*, 55 Wn. App. 706 (questionnaires prepared by city's parks department to survey other governmental agencies' management of municipal golf courses were "public records" even though they were not the formal product the department intended to release to the public).

Evidence that the PUD used the technical specifications portion of the IPS 10380 here is demonstrated by the fact that PUD officials and consultants attended meetings at Cogentrix's offices in North Carolina, where technical specifications relating to the gas turbine engine were reviewed during negotiations between Cogentrix and GE. Also revealing is the PUD's 1996 letter to CRA member Robert Wachter indicating that the District had reviewed and carefully evaluated all of the technical data related to the turbine generator. Clearly, that GE may have claimed that the technical design of the IPS 10380 was proprietary information did not preclude the PUD from reviewing and evaluating such information. Thus, the PUD "used" the requested portion of the IPS 10380 because not only do various documents relating to the project proposal and description refer to the IPS 10380, but agents of the PUD had also reviewed the technical specifications when they met with Cogentrix and GE representatives.

Although the record is unclear as to the exact nature and extent to which the PUD used certain portions of the IPS 10380, the evidence appears to support the CRA's claim

that the PUD "used" the IPS 10380. "Use" of the IPS 10380 was not limited to a mere reference in a manual, but the PUD's consideration of the technical specifications was clearly instrumental to the process of building the power plant. The circumstances surrounding the PUD's review, evaluation, and reference to the IPS 10380 satisfies the definition of "use" as set forth by the Court of Appeals.

■ In an alternative response, the PUD nevertheless argues that the IPS 10380 was not used because the contract with Cogentrix evolved from a specifications-based contract to a performance-based contract, thereby rendering consideration of the technical specifications of the IPS 10380 irrelevant. Initially, whether a contract is specifications- or performance-based does not, by itself, determine whether technical documents are "used." Further, the project as initiated here was a specifications-based contract that anticipated installation of the IPS 10380 model of the turbine generator. The record establishes that the technical capability in the IPS 10380 was an important consideration as evidenced by Cogentrix's specific references to the specifications document in its proposal to the PUD and the additional references to the model in the project description summarizing the main equipment. The turbine generator was a major component of the power plant and the PUD expected to review the technical design portions of the IPS 10380, further underscoring the importance of the document in the District's decision-making process to build the power plant. Hence, regardless of the change to a performance-based contract, the PUD used the IPS 10380 since the technical specifications were directly related to construction of the power plant.

Finding "use" under these circumstances is consistent with the Act's broad purpose in favor of disclosure and our case law holding that release of public records is not limited to only those which bear on an agency's final decision. *See, e.g., Yacobellis,* 55 Wn. App. 706. Accordingly, we hold that evaluating, reviewing and referring to the document constitutes "use" within the meaning of the Public Disclosure Act and that the IPS 10380 is a public record.

However, the affidavits submitted by the PUD raise questions as to whether the technical specifications sought by the CRA are exempt as valuable formulae, designs, drawings, or research data under RCW 42.17.310(1)(h).[10] The CRA urges this court to require the PUD to disclose the technical specifications document relating to the IPS 10380, but neither the statute or case law requires disclosure where a public record is exempt. Whether the PUD must disclose the IPS 10380 turns on a determination of the document's exempt status. We remand for further proceedings to determine whether the technical specifications of IPS 10380 are exempt as research data under RCW 42.17-.310(1)(h).

■ CRA next argues that it is entitled to attorney fees and statutory penalties if it prevails in showing that the PUD "used" the specifications document relating to the IPS 10380, making it a public record that should have been disclosed. However, attorney fees may be awarded only upon a showing that the requested information can actually be disclosed. That is, in order to prevail against an agency, a party must demonstrate that either the requested document was disclosable, or that the party had the right to receive a response to the public record request within a reasonable amount of time. Specifically, RCW 42.17.340(4) provides:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record.

---

[10]*Cf. PAWS*, 125 Wn.2d 243 (university's research data relating to intellectual property exempt); *Servais v. Port of Bellingham*, 127 Wn.2d 820, 904 P.2d 1124 (1995) (cash flow analysis for port properties prepared for port's sole use in negotiations with prospective joint venture partners, equity partners and operators was within research data exemption).

Attorney fees should be awarded only when documents are disclosed to a prevailing party, assessed only from the date on which the requested documents were identifiable. *Limstrom v. Ladenburg*, 136 Wn.2d 595, 616, 963 P.2d 869 (1998); *Dawson v. Daly*, 120 Wn.2d 782, 800, 845 P.2d 995 (1993).

Here, although the requested document is a public record, whether it is a disclosable public record has yet to be determined. The CRA thus has not prevailed against the PUD as required by RCW 42.17.340(4). Without actual disclosure of the requested portion of the IPS 10380, an award of attorney fees and statutory penalties cannot be made. Because further fact-finding is necessary to determine whether the requested document, IPS 10380, is an exempt public record under RCW 42.17.310(1)(h), we also remand the question of attorney fees and statutory penalties to the trial court.

The Court of Appeals is reversed, and the matter remanded for further proceedings.

GUY, C.J., SMITH, JOHNSON, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., and KENNEDY, J. PRO TEM., concur.