[No. 46813-8-I.   Division One.   June 4, 2001.]

DAN OLSEN, ET AL., *Appellants*, v. KING COUNTY, *Respondent*.

___

[17] RAP 10.3(a)(3), (g), (h).

*Jennifer A. Dold* (of *Bricklin & Gendler*), for appellants.
*Norm Maleng, Prosecuting Attorney*, and *Janine E. Joly, Deputy*, for respondent.

COLEMAN, J. — On December 11, 1998, a hearing examiner ordered King County to reexamine commercial site development permits it granted for a proposed project called Lakepointe "to determine if conditions of approval should be imposed or if an exception is appropriate." Although the County maintains that it decided to grant a special exception in August 1998, Ronald J. Paananen drafted a letter dated January 13, 1999, on behalf of the County that granted the special exception. Shortly thereafter, nearby residents Bonnie and Dan Olsen requested, under the public disclosure act (PDA), "all documents used or considered by Ronald J. Paananen or any King County employee, agent or contractor in making the January 13, 1999 'Lakepointe Mixed-Use Development File No. B96CS005 Finding of Special Exception.'" Although the County made numerous documents available to the Olsens, it did not make available to them a memorandum that it reviewed before it drafted the January 13, 1999 letter because—according to the County—it did not use or consider that memorandum in August 1998 when it made the decision to grant the special exception. The trial court concluded that the County did not violate the PDA in doing so, and the Olsens appeal.

Under the PDA, the County was required to produce all documents that it reviewed before it drafted the January 13, 1999 finding. The Olsens' PDA request specifically sought all documents used or considered in making the January 13, 1999 finding. Despite the County's contention that the decision to grant the special exception was made in August 1998, there can be no final decision to grant the

exception without a written finding. We conclude that the County violated the PDA by failing to produce the memorandum that Paananen reviewed before he drafted the January 13, 1999 finding. Accordingly, we reverse and remand this case to the trial court for a determination of appropriate relief under RCW 42.17.340(4), including reasonable attorney fees at trial and on appeal.

## STATEMENT OF FACTS

On August 13, 1998, King County approved permits for a proposed residential and commercial development called "Lakepointe."[1] On August 27, 1998, nearby residents Bonnie and Dan Olsen appealed these permits, contending that the Lakepointe proposal violated King County's Integrated Transportation Program regulations, King County Code (KCC) ch. 14.65. Under such regulations, if the County determines that full compliance is infeasible, then it will grant an exception. On December 11, 1998, the City of Kenmore hearing examiner found that the proposal will generate additional traffic at a new intersection that requires mitigation unless extraordinary conditions exist which make full compliance infeasible. He then noted:

> County staff testified that an exception must have been granted for this intersection pursuant to the [Integrated Transportation Program] Rules. The exception is not in written form or referred to in the permit approvals. . . .
>
> . . . .
>
> . . . Minimum considerations of due process require that any exception be issued in writing, that some basis in fact is given for any exception, and that anyone who disagrees with an exception be given an opportunity to appeal.

The hearing examiner therefore ordered the County to

---

[1] Although the Lakepointe proposal was located in unincorporated King County at the time King County approved the initial permits, the land was incorporated into the City of Kenmore shortly thereafter. At that time, jurisdiction for processing land use appeals of King County permits was transferred to the City of Kenmore under Interlocal Agreement, City of Kenmore Ordinance No. 98-0027.

reexamine the permit "to determine if conditions of approval should be imposed or if an exception is appropriate."

In response, on January 13, 1999, the County—through its designee, King County Road Engineer Ronald J. Paananen—drafted a letter to the City of Kenmore. The first page of the letter references the following:

RE: Lakepointe Mixed-Use Development

   File No. B96CS005

   Finding of Special Exception

In that letter, Paananen explained that "there are extraordinary circumstances associated with the proposed new intersection . . . that make full compliance with the Intersection Standards [KCC 14.80] infeasible at this location." At the end of the letter, he wrote: "Accordingly, I grant an exception from the requirements of King County Code Chapter 14.80 (Intersection Standards) for th[is] intersection."

On January 22, 1999, a letter was written to the County on the Olsens' behalf, requesting under the PDA "[a]ll documents used or considered by Ronald J. Paananen or any King County employee, agent or contractor in making the January 13, 1999 'Lakepointe Mixed-Use Development File No. B96CS005 Finding of Special Exception.' " In response, the County made 13 documents available for the Olsens' review.

In February 1999, the Olsens appealed the Lakepointe special exception to the hearing examiner. On April 5, 1999, the hearing examiner vacated the County's decision because the "County did not explain what traffic reduction strategies were explored and why they were rejected prior to the issuance of the exception." The hearing examiner therefore remanded the application to the County for further review. In November 1999, Dan Olsen discovered in the City's files a memorandum that the County failed to make available or mention in response to the PDA request. That memorandum was dated January 6, 1999—which was seven days before the County issued the letter granting the

special exception to Lakepointe—and addressed to the "Lakepointe Transportation Team" from the attorney representing the Lakepointe proposal applicant. It states, in part:

Here is a copy of the proposed draft of a response to the Hearing Examiner's decision in the Lakepointe appeal. . . .

. . . .

Given that these issues are relatively straightforward, it may not be necessary to have a meeting to review the response. I would appreciate it if I could collect comments by next Monday, January 11, 1999, because this response needs to be filed by next week. In addition, you will need to determine which Manager's designee should sign the special exception. I will e-mail the draft to you when all comments have been received (including from the City).

Attached to the memorandum was a document that is nearly identical to the January 13, 1999 letter in which Paananen granted the special exception. The County failed to produce this memorandum or the attached draft in response to the Olsens' January 22, 1999 PDA request. King County Senior Transportation Planner John Shively told Dan Olsen that the County used this draft to prepare Paananen's January 13, 1999 letter granting the special exception.

On December 22, 1999, a letter was written to King County Executive Ron Sims on behalf of the Olsens, asking him to immediately investigate the County's failure to make "a key document" available to them following their PDA request. Executive Sims acknowledged that the memorandum had been "reviewed and edited by King County Road Engineer, Ronald J. Paananen, and County staff, and was finalized in the January 13, 1999 letter." But he claimed that the memorandum "did not contain any new information used or considered . . . in granting the Special Exception." Executive Sims maintained that the memorandum "in no way influenced the preceding year's decision to allow an exception[.]" He further explained that the information contained in that memorandum "was provided to

him by County staff during several coordination meetings held from October through December of 1998 while preparing for the Lakepointe Appeal Hearings." Executive Sims, therefore, opined that the County staff complied with the Olsens' disclosure request and the PDA.

On April 27, 2000, the Olsens filed a motion to show cause in King County Superior Court, asking the trial court to order the County to produce all appropriate documents. In response, the County maintained that it did not use or consider the memorandum when it decided to grant Lakepointe's special exception, though it admitted that it used the memorandum to prepare the January 13, 1999 special exception. It argued that the special exception was made in August 1998 before the memorandum was written.

The trial court denied the Olsens' motion to show cause and dismissed the case for failure to state a cause of action for which relief could be granted. It found that "[t]he January 6, 1999 memorandum at issue in this case, was not responsive to plaintiffs' January 22, 1999 public disclosure request because plaintiffs did not ask for the document[.]" The trial court therefore concluded that no PDA violation occurred. The Olsens appeal the trial court's denial of their motion, its order of dismissal, and its denial of their motion for reconsideration.

## DISCUSSION

The Olsens maintain that the County violated the PDA by failing to disclose the January 6, 1999 memorandum and attached draft of Lakepointe's special exception. The County does not dispute that these documents are public records or that they are subject to disclosure under the PDA. It even acknowledges that it used these documents to prepare Paananen's January 13, 1999 letter formalizing its earlier decision to grant a special exception to Lakepointe. Even so, it maintains that the January 6, 1999 memorandum and attached draft of Lakepointe's special exception were not used or considered by Paananen in August 1998

when he decided to grant the special exception. The County maintains that there was no PDA violation in this case because the Olsens' January 22, 1999 letter merely requested documents used or considered by Paananen in making the decision to grant the special exception.

■■ Under the PDA, public records that are not exempted "shall be available for inspection and copying, and agencies shall, upon request for identifiable public records, make them promptly available to any person." RCW 42-.17.270. The provisions of the act are to be construed liberally to promote complete disclosure of public records. *Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993). "As a threshold matter, however, the act only applies when public records have been requested. In other words, public disclosure is not necessary until and unless there has been a specific request for records." *Bonamy v. City of Seattle*, 92 Wn. App. 403, 409, 960 P.2d 447 (1998). "Courts shall take into account the policy of [the PDA] that free and open examination of public records is [in the] public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.17.340(3). "Judicial review of all agency actions taken or challenged under [the PDA] shall be de novo." RCW 42.17.340(3).

■ In this case, the Olsens requested "[a]ll documents used or considered by Ronald J. Paananen or any King County employee, agent or contractor in making the January 13, 1999 'Lakepointe Mixed-Use Development File No. B96CS005 Finding of Special Exception.' " "[E]valuating, reviewing and referring to [a] document constitutes 'use' within the meaning of the [PDA]." *Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1*, 138 Wn.2d 950, 962, 983 P.2d 635 (1999).

■ It is undisputed that the County used the January 6, 1999 memorandum and attached draft of Lakepointe's special exception when it made the finding in the January 13, 1999 letter. The Olsens' PDA request asked for all documents used or considered in making the finding. The

Olsens' letter specified the file number and title referred to on the first page of the letter ("No. B96CS005 Finding of Special Exception") and the date of the letter (January 13, 1999). From these details, it is clear that the Olsens were referring to the documents used or considered by the County in drafting the January 13, 1999 written finding, rather than documents that may have been used or considered before August 1998.

Moreover, as the hearing examiner pointed out, the special exception must be issued in writing to afford an opportunity to appeal to anyone who disagrees. The County did not issue the special exception in writing until January 13, 1999, when Paananen stated: "Accordingly, I grant an exception[.]" Indeed, the written finding is the formal decision. Thus, we reject the County's contention that the exception was issued in August 1998 and merely formalized on January 13, 1999. Considering the requirement to liberally construe the PDA to promote free and open examination of public records, we reject the County's technical distinction between documents it considered before August 1998 and documents it considered when it made the January 13, 1999 finding. In response to the Olsens' PDA request, the County was required to produce documents that it reviewed before it drafted the January 13, 1999 letter granting the special exception, including the January 6, 1999 memorandum and attached draft of Lakepointe's special exception. Its failure to do so violated the PDA.

The PDA authorizes the trial court to grant an award to any person who prevails against an agency:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record.

RCW 42.17.340(4). Although the Olsens have had in their possession the disputed memorandum and attached draft letter since November 1999, the County has not yet made these documents available to them.

In sum, the County violated the PDA when it failed to make available to the Olsens the January 6, 1999 memorandum and attached draft of Lakepointe's special exception in response to their specific request. We therefore reverse the trial court's denial of their motion to show cause, its order of dismissal, and its denial of their motion for reconsideration. Further, we remand this case to the trial court for a determination of an appropriate award to the Olsens under RCW 42.17.340(4), including reasonable attorney fees at trial and on appeal.

BAKER and ELLINGTON, JJ., concur.