IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ERIC HOOD,<br><br>          Appellant,<br><br>          v.<br><br>THE CITY OF LANGLEY,<br><br>          Respondent. | No. 86209-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Eric Hood claims the City of Langley improperly narrowed the universe of documents responsive to his Public Records Act (PRA), ch. 42.56 RCW, request and, in doing so, withheld documents it should not have. Because the court tracked the plain language of Hood's request and determined that the City properly produced documents which fell within the scope of that request, we affirm its dismissal of Hood's civil action.

## I.    BACKGROUND

In July 2018, the Whidbey News-Times reported that the City had fired its police chief, David Marks, in connection with a use-of-force incident in November 2017. Later that month, Hood emailed the City a PRA request, which asked in pertinent part for "any records related to the City's decision to terminate Dave Marks." The City's record productions included an "Expert Use of Force Opinion" report authored by Glen Carpenter, a third-party consultant hired by the City.

Carpenter's report included a list of numerous materials he had reviewed.

In July 2019, Hood filed a pro se complaint, alleging the City violated the PRA. Hood obtained counsel thereafter. In September 2023, the City filed a successful "Motion for Judicial Review and Dismissal Pursuant to RCW 42.56.550(3)." Hood then timely appealed. Thereafter, the Washington Coalition for Open Government filed an amicus brief supporting Hood's appeal.

## II.    ANALYSIS

Hood brings two assignments of error on appeal. First, he claims that "the City and trial court erroneously narrowed Hood's PRA request to less than its actual wording, in violation of West v. City of Tacoma, 12 Wn. App. 2d 45, 82, 456 P.3d 894 (2020)." Second, he claims that "the trial court erred as a matter of law in ruling that responsive public records in the possession of the City's UOF consultant were not the public records of Langley because the consultant was 'independent' of the City."[1] In other words, this appeal concerns (1) the scope of Hood's PRA request and (2) whether the documents underlying Carpenter's report fit within that scope. We review both assignments of error de novo. Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 432, 327 P.3d 600 (2013).

As a preliminary note, the City argues Hood failed to preserve the above

---

[1] While his opening appellate brief references the City's search at a high level, Hood does not substantively discuss the analysis required for an inadequate search claim. See, e.g., West, 12 Wn. App. 2d at 78-79 (providing the framework of such an analysis); see also Wash. Ct. of Appeals oral argument, Hood v. City of Langley, No. 86209-0-I (Jul. 16, 2025), at 22 min., 3 sec. through 22 min., 7 sec. video recorded by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025071111/?eventID=2025071111 (explaining "we didn't get into the search issue because they claimed they narrowed it"). Thus, we will not address the issue.

assignments of error under RAP 2.5. It is true that Hood's highly generalized pro se complaint did not reference any purported "narrowing" of his request or Carpenter. And Hood did not appear to reference either argument until his response to the City's motion. However, Hood articulated both issues at or by the time of the court's hearing on his motion, and thus the trial court had an "opportunity" to address each. That may be sufficient. State v. Robinson, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (holding that the rule precluding a party from raising an issue for the first time on appeal "ensure[s] that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals"); see also Lunsford v. Saberhagen Holdings, Inc., 139 Wn. App. 334, 338, 160 P.3d 1089 (2007) (holding that, "if an issue raised for the first time on appeal is 'arguably related' to issues raised in the trial court, a court may exercise its discretion to consider newly-articulated theories for the first time on appeal."). Even assuming without deciding that Hood's arguments were unpreserved, we exercise our discretion under RAP 2.5 to review both, as they are fully briefed by the parties. State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999) (noting RAP 2.5 "never operates as an absolute bar to review").

A.    Scope of Hood's PRA Request

In full, Hood's 2018 PRA request reads:

Please disclose any records related *to the City's decision* to terminate Dave Marks. These would include but are not limited to any formal or informal complaints about Marks and any records requests referencing Marks. It would also include any internal communications among City employees, agents or elected officials related to Marks' conduct or actions. It would also include any City communications with any outside agencies, persons or entities related to Marks' conduct or actions. Please provide records in

3

electronic format.

(Emphasis added.)

Hood now argues that his request was a "broad request," which "cannot be interpreted as anything other than a request for 'all' records, i.e., the entire 'universe' of public records relating to the incident." In other words, Hood urges us to interpret his PRA request as encompassing all documents relating to the use-of-force incident, not just those relating to the City's decision to thereafter terminate Marks. We disagree.

The PRA is indeed "'a strongly worded mandate for broad disclosure of public records,'" which must be "liberally construed." Progressive Animal Welfare Soc. v. Univ. of Wash., 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (quoting Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). In turn, an agency's interpretation of a PRA request cannot be "narrower than its language." West, 12 Wn. App. 2d at 81.

Even so, Washington courts interpret the scope of PRA requests based on the "*actual wording*" or "*plain language* . . . of the request,"[2] not the post-hoc interpretations or rationalizations of the requestor, respectively. See West, 12 Wn. App. 2d at 82 (emphasis added); Hood v. City of Vancouver, 33 Wn. App. 2d 799,

---

[2] To further illustrate, this court explained in another appeal litigated by Hood that its analysis was based on "[l]ooking to the plain language of [his] request," not his post-hoc interpretations. Hood v. Centralia Coll., No. 56213-8-II, slip op. at 17 (Wash. Ct. App. Aug. 2, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056213-8-II%20Unpublished%20Opinion.pdf.

812, 564 P.3d 1009 (2025) (emphasis added) (involving a PRA request by Hood).

In support of the claim that he requested the "entire 'universe'" of documents relating to the use-of-force incident, Hood heavily but unpersuasively relies on Cantu v. Yakima Sch. Dist. No. 7, 23 Wn. App. 2d 57, 514 P.3d 661 (2022). Cantu involved an express request for "'*[a]ll incidences/incident reports* where [a specific student] was a victim of bullying, threats, harassment, etc.,'" within specified time periods. 23 Wn. App. 2d at 84-85 (emphasis added). That is, the PRA request in Cantu expressly asked for (a) "all reports" (b) from "any" bullying or harassment incidents. Id. at 99-100.

Here, in contrast, the plain language of Hood's PRA request specifies "any records" related, not to a type of incident, but *"to the City's decision* to terminate Dave Marks." (Emphasis added.) The plain language of Hood's actual PRA request did not, as he claims, reference "'all' records . . . relating to the [2017 use-of-force] incident," any other incident, or even Marks' termination generally, as was the case in Cantu. cf. Cantu, 23 Wn. App. 2d at 82, 99 (holding that, "had Ms. Cantu simply requested 'incident reports,' . . . her request would be for a specific type of public record" but that it was "not [so] qualified" as "the term 'incidences/incident' modifies the request for reports"). The request here was qualified by the term "decision" and does not have the breadth Hood now ascribes to it.

It follows then that Hood's appeal is distinguishable also from matters involving PRA requests which are even facially broader. See, e.g., West, 12 Wn. App. 2d at 81-82 (holding that, where "records 'concerning *any* agreements,

policies, procedures, or understandings related to the acquisition, use, or operation of stingray technology,'" the request included the agency's "understandings regarding CSS technology and what information the public can know," including "formulation of a press release"); Cedar Grove Composting, Inc. v. City of Marysville, 188 Wn. App. 695, 703, 354 P.3d 249 (2015) (where plaintiff requested "'any and all available information' about communications and professional services agreements 'between or among' the City and Strategies, local citizen Mike Davis, the group 'Citizens for a Smell Free Marysville,' the Tulalip Tribes, media outlets, and a number of other parties").

In response, Hood points to the numerous examples he listed within his PRA request which he purports broadened its scope, including the request for "any formal or informal complaints," "internal communications," or "communications with any outside agencies" relating to Marks.

These examples must be gauged within the full text of Hood's request. See West, 12 Wn. App. 2d at 79 (holding that we should examine "the scope of the agency's search *as a whole* and whether that search was reasonable, not whether the requester has presented alternative that he believes would have more accurately produced the records he requested") (emphasis added). Here, Hood's argument disregards the fact that he expressly framed each of these examples as being "include[d]" within his overall request for documents "related to the City's decision to terminate Dave Marks."

Finally, Hood also asserts that the "City never asked [] to clarify what he meant by 'the City's decision.'" While "an agency is required to interpret requests

6

broadly, [it] is only required to clarify if any ambiguity remains *after* applying a broad interpretation." Gronquist v. Dep't of Corr., 32 Wn. App. 2d 617, 639 n.9, 557 P.3d 706 (2024); see also Hood, 33 Wn. App. 2d at 810-11 ("an agency is required to seek clarification for an *unclear* request") (emphasis added). Our plain reading of the actual wording of his PRA request demonstrates the request was not "unclear."

In short, we hold that the court did not err in finding that Hood's request sought documents "related to the City's *decision* to terminate Dave Marks," not the "'entire universe'" of documents conceivably relating to the use-of-force incident, as Hood later claimed. We now turn to whether the documents that were not produced fell within the scope of that request.

B.      Documents Underlying Carpenter's Report

Hood claims numerous documents underlying Carpenter's report, such as those listed on a "Materials Reviewed" page, fell within the scope of his request and were thus subject to PRA disclosure. We disagree.

To resolve this request, we need not determine whether Carpenter is an "agency" under the four-factor test from Telford v. Thurston County Bd. of Com'rs, 95 Wn. App. 149, 162, 974 P.2d 886 (1999), or whether the documents had a "nexus" with the City's "decision-making process," "thereby rendering the information a public record."[3] Concerned Ratepayers Ass'n v. Pub. Util. Dist. No.

---

[3] As our Supreme Court explained, "the Telford test is an appropriate way to decide whether *a private entity* must comply with PRA disclosure requirements." Fortgang v. Woodland Park Zoo, 187 Wn.2d 509, 513, 387 P.3d 690 (2017) (emphasis added). In other words, it appears the Telford analysis is better suited for a hypothetical request sent directly to Carpenter, not one sent to the City.

And we do not reach whether the documents underlying Carpenter's report satisfy

1, 138 Wn.2d 950, 952, 983 P.2d 635 (1999) (quoting RCW 42.17.020(36)).

Rather, in a somewhat similar fashion to Cantu, "the parties [] dispute . . . [whether] the [challenged documents] *fall within the scope* of [Hood's] record request[]" as opposed to a whether there is a "valid exemption to withhold the records." 23 Wn. App. 2d at 99 (emphasis added); see also Hood v. City of Prescott, No. 39618-5-III, slip op. at 6 (Wash. Ct. App. Apr. 30, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/396185_unp.pdf (noting that, "before a court can determine whether a search for records was adequate, it must determine the scope of the request or what records are being requested.").[4]

In an answer to an interrogatory verified by the City's mayor under oath,[5]

---

the "nexus" test from Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1, 138 Wn.2d 950, 952, 960-61, 983 P.2d 635 (1999). Here, Hood primarily relies on various emails between the City's mayor and Carpenter, which represent Carpenter's own attempts to gather various potential sources for his report and contain no actual substantive discussion of these underlying documents by the mayor.

[4] We cite this unpublished matter under GR 14.1(c) as it is "necessary for a reasoned decision" as an on-point and illustrative example.

[5] Hood characterizes the City's interrogatory answer as "self-serving," but otherwise does not substantively challenge it on specific evidentiary grounds. To the extent he expressed such a challenge for the first time at oral argument before this court, we need not consider the issue as he "did not assign error to it, and did not discuss it in his briefing." Heckard v. Murray, 5 Wn. App. 2d 586, 600, 428 P.3d 141 (2018). Regardless, Hood offers no authority that this verified interrogatories cannot be considered. CR 33 (requiring interrogatories be answered "in writing under oath," "signed" and allowing use at trial if "otherwise proper"); FED. R. CIV. P. 33(b), (c); see also Matalavage v. Sheriff of Niagara County, No. 20-CV-1254Sk(F), 2023 WL 2043865, at *8 (W.D.N.Y. Feb. 16, 2023) (court order) ("[I]nterrogatory responses may be used at trial, and, thus, are akin to testimony, they must be specifically answered by the party to whom they are directed and signed by such party under oath."); see also Am. Linen Supply Co. v. Nursing Home Bldg. Corp., 15 Wn. App. 757, 764, 551 P.2d 1038 (1976) (noting the "federal rule" is comparable to CR 33 and holding "interrogatories may be considered in ruling on a motion for summary judgment").

the City asserted that the "decision" to terminate Marks was "exclusively within the authority of the Mayor under the City of Langley's form of government." Two city counselors reiterated the mayor's exclusive decision-making authority for employment in two separate depositions. The discovery answer went on to describe that the mayor "created the files and records concerning employment of Chief Marks and maintained the files concerning his potential termination" and "assembled responsive records into a binder/notebook that contained the records relevant to Marks' employment situation." These assertions and explanations of the scope of the decision to terminate Marks are unrebutted.

Instead, in response, Hood argues that these underlying documents were relevant to the City's decision to terminate Marks by primarily citing to various emails between the City's mayor and Carpenter. These emails are immaterial as they represent Carpenter's own attempts to gather various potential sources for his report. These emails contain no actual substantive discussion of these underlying documents by the mayor, or any other indication they were actually used for or relevant to "the City's decision to terminate Dave Marks." Additionally, Hood's reliance on vague statements that the mayor may have "sent" Carpenter some documents is insufficient. See, e.g., Fortgang v. Woodland Park Zoo, 187 Wn.2d 509, 533, 387 P.3d 690 (2017) (noting a City providing "some financial and material support" to a third party does not automatically "implicate the concerns underlying the PRA."). Hood otherwise offers no evidence the documents underlying Carpenter's report influenced the City's decision at all.

Thus, we hold the court did not err in finding that the documents underlying

9

Carpenter's report did not fall within the scope of Hood's PRA request, as defined above. In turn, we reject Hood's claim that the City violated the PRA by not disclosing these underlying documents.[6]

C.      Attorney Fees and Sanctions

Hood requests appellate fees under RCW 42.56.550(4). We deny this request as Hood "does not prevail in this action, thus, he is not entitled to fees." McKee v. Paratransit Servs., 13 Wn. App. 2d 483, 496, 466 P.3d 1135 (2020) (citing RCW 42.56.550(4)).

The City requests sanctions under RAP 18.9(a). "RAP 18.9(a) permits an appellate court to award a party attorney fees as sanctions, terms, or compensatory damages when the opposing party files a frivolous appellate action." Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010). We decline to impose RAP 18.9(a) sanctions here. See id. (holding that "[a]ll doubts as to whether the appeal is frivolous should be resolved in favor of the appellant.").

III.      CONCLUSION

We affirm.

Díaz, J.

WE CONCUR:

Feldman, J.                    Chung, J.

___

[6] Because of the way we resolve this matter, we need not reach and, thus, deny Hood's Motion to Judicially Notice Material Public Records.